When the lawyers are going to argue the case, please introduce yourself to the court. My name is Bert Lang. I'm here with Ed Washington. We represent the insurance shop. My name is Richard Stevens. I'm on behalf of Everly Shaw, the equity. Okay. As to the appellant, do you want to reserve some time for rebuttal? I would, if I could reserve five minutes. Okay, you have 15 minutes total. Let's proceed. Before we commence, I should point out, and I didn't realize this, that I am familiar with Mr. Washington. We served on the Catholic Lawyers' Guild together. Same thing here. I'm familiar with Mr. Washington. But he didn't serve on the Catholic Lawyers' Guild. I also know Judge Washington. However, he never remembers me, so I don't think it really counts. Yeah, it's not going to affect us at all. In the words of Justice Eugene Finch, if I had to appear in court sometime, I would do it. If there are no objections, then thank you. Okay, let's proceed. Do you want me to keep my mask on? No, when you're speaking, you can remove your mask. Okay, thank you. Good morning again, Justices Bertrand and Ed Washington II from Terrence Shaw. We thank the Court, opposing counsel, for the privilege of arguing this first impression issue and hopefully obtaining a decision on the merits of this statute and interpretation. Today we're asking you to grant the decedent Tyrone Shaw's express intent to provide for his children, not his ex-wife, who is now known as Beverly Warren, actually, and formerly known as Beverly Shaw. And to interpret the revocation upon divorce statute as the legislators actually intended it to be interpreted. First, the clear temporal reach of the statute is a default rule on the presumed intent that the decedent did not want to provide for his ex-wife unless he took certain enumerated acts as the statute provided. Both sides here concede that the decedent did not take any of the three enumerated acts after the divorce was entered to provide for the redesignation of his wife. Mr. Green, isn't it the sole issue really for us to decide is what's the operative date that we're looking at? Is it the dissolution date or is it the death date? Yes, that's an issue obviously for the court to decide. And we believe it's the death date. That's a key date. And all the courts around the country have discussed that as being the death date. And also it's the law at the time the decision has been entered. That's an axiom in the law that you look at as the law is when you make the decision. But what about the courts in this state? The courts in this state view that as well. If you look at the retroactivity analysis, it's no one-size-fits-all. As a matter of fact, Justice Reed, in a recent decision by you, in the Fernandez case interpreting the motion to seal for eviction cases, that was a case where the statute changed while the motion was pending, but the facts antecedent facts were before the statute changed. So again, to demonstrate no one-size-fits-all for this analysis, Your Honor, you join in that opinion, it was unpublished, but it looked at that you allow the statute as the law was on the date or the hearing of that motion, even though all the antecedent facts took place prior to the effective date of that statute. So in Illinois, we follow that rule that we look at no one-size-fits-all for any kind of analysis. Your Honor, but in this instance, aren't we guided by our Supreme Court, in the case of inlaying will of toller, which basically the Supreme Court said that unless the term retroactive is in the statute, that then we have no basis to interpret that it's there, or we cannot apply the statute retroactively? That case, the toller statute, that was in 1875, I believe. But if you look at that case from when it was interpreting another statute, there's key differences about that. When you look at actually reading that case, they talk about the Tyler versus Tyler case, interpreting the same statute and also holding the opposite way, that it was not the same holding as in toller. So even though toller did not overrule Tyler versus Tyler, the same statute, the same facts, and they said the operative date was different from toller. So we have two different, completely opposite Illinois Supreme Court cases from the 1800s. But times have changed since the 1800s as well. And also those two holdings in the 1800s were obviously pre-RUD, revocation upon divorce, pre the Perry versus that was a 2018 Illinois Supreme Court case. We have the factors to discuss. And also, it was also decided prior to the Langrath case, which is a late 1900s United States Supreme Court case. So they didn't analyze any of those retroactivity decisions and factors about vested interests, for instance. Here, Beverly had no vested interest at all in the policy. The divorce decree didn't say then allocate the insurance policy at all. That part of the divorce decree was left blank. Beverly also filed a two 1401 petition about 10 months after the divorce was finalized in 2016. Again, in that stipulated 1401 court order, as you might call it, nothing about the insurance. So in either, in all proceedings until the death, there's never been a mention of this life insurance policy, correct? In the divorce decree, there's no mention of it. The 1401 petition, there's no mention of it. So there's, we can't assume anybody's intent, right? No, it was, first of all, in the 13.3s that both parties filed in the divorce case, the decedent actually listed that out. And he also- Listed it out as an asset. Yes, as an asset. And he listed it out in the insurance. Beverly did not do so. Also, the decedent was paying the insurance premium. He listed it on his deductions from his household income expenses. So in that regard, it was discussed, but not in the judgment. In Beverly's petition in her affidavit, she discussed a non-insurance policy, a $25,000 insurance policy. But she didn't discuss this $250,000 insurance policy. But in that, on the paragraph N of the decree- But he continued to pay the premiums on that until his date of death, correct? Yes. On the $250,000 one. And so couldn't we infer that he knew who the beneficiary was? If he's still paying off a premium to it? No, no, because usually when you're doing automatic deductions, you're not writing a check every month. You can easily forget about that. It's coming out of your bank account. It doesn't rise to your level of knowing about it. But that's actually what the legislators talked about when they presented this bill on the Senate floor. If you have Mr. Anderson discussing this in part of my appendix, he said that this is the act to provide for what happens in the event disillusionment of marriage and active disillusionment of a spouse fails to correct who the beneficiaries are of the life insurance policy. Provide that it's automatic. Provide that it will go to the children or any other designated individual rather than the ex-spouse. And again, when you look at the synopsis, the Illinois General Assembly synopsis, it says the same thing. It also talks about the other- Senator Weaver talks about when you forget about it, it's in a drawer. So clearly, when you look at all the analysis, the law review articles, the Harvard law review articles that was studied in the Meyer case- But the legislators specifically didn't make that retroactive. They didn't use retroactive. But you don't have to. You don't have to go to that level yet. Because here, under the PERI or the Lions Graph analysis, you have to look at did she have a vested right to anything, hopefully. The answer is no. She didn't own the policy. It was owned under the contract terms of the insurance policy. It was owned by the decedent. She didn't pay any premiums. Did she have any- It was only expectancy, and that's clear Illinois law. The same argument for the children. The children also don't have a right to the policy, yet they're claiming that- or particularly Terrence is claiming that he's a beneficiary under the policy. The children were listed as contingent beneficiaries, as, for instance, the estate would be the contingent beneficiary. So without this statute specifically saying ex-wife is off the policy, without that statute, what would your argument be? The answer is easily that the ex-wife gets it. So we don't have any quarrel with that, and that's the law. So is there any interpretation finding that that statute would apply to a prior dissolution proceeding? In Illinois, this is first impressions. Illinois has not discussed it. The only closeness Illinois has is a federal court decision, and an intercourter case, and they said that, clearly, the issue is the data of abortion or the data of death. There's nothing else in Illinois about this, and that's why I had to resort. This is uniform law to other states. Every other state that has looked at this issue, divorce or death of date, we all know that the death date is the key date, and we have it in the minor. The minor just came out about 25 days ago, the South Carolina case from the appellate court there, and that was well-analyzed, and they looked at all the arguments Beverly has made in that case, and they've also cited other states, which includes, I think, the Stoneman, the 10th District case, the Montana and Colorado case ruled in the same way, the Bulkholz v. South Dakota, the Hertz v. Snowyer Utah case, the American Family v. Parker Massachusetts, the Stanford Nevada case. Those are all states that have ruled the same exact way consistently with a very similar statute compared to Illinois' statute. But they refer to the Uniform Probate Code, right? Yes. They refer to it because that's what those cases refer to, right? So if our legislature here wanted to have the same effect, they could have used the same language that's in the Uniform Probate Code, but they didn't. They did something completely different. Well, when you look at the way the statute is written, it talks about the divorce having happened. They didn't say that only, they could have said, for instance, that only after the divorce is after the effective date of the statute. They also didn't do that either. Maybe it's not the best drafting by their legislators, but their intent, Senator Weaver and Representative Anderson, the synopsis of the statute, if you look at the intent of the statute, it's clear from all the intent that when a person who got divorced forgets to change a policy, the divorce, as soon as it was divorced, automatically voids the designation of the ex-wife as a recipient of that policy. And so you still have to go back to the Perry and Landsgraf analysis. Did she have any new duties? No, she didn't. He was paying the insurance premiums. She didn't have any new duties. Did it impair any of the rights of hers? No, it didn't. Isn't the key to this case the operative act triggering the application of the statute? The application of the insurance. There's actually been no case around the entire country that looked at the date of the insurance policy as a key date in this case. No, but there has to be an operative act triggering the application of the statute, and wouldn't that be the date of the dissolution of judgment? No, because the operative act is the date of death. If he doesn't die, what case is it? There's no other case on this at all. But if you look at the Meyer case, if you look at all the articles contained in the Meyer v. Benford, although it's South Carolina, it's well-reasoned. And they went through all the arguments. They looked at the Perry analysis. I mean, the Landgraf analysis because it was South Carolina. They look at those factors, and it's really a rule of construction. It's not substantive analysis. Well, wouldn't you find that in the Stillman case and the Buckholtz case, those are not Illinois cases? Well, we don't have any choice but to look at other states, a well-reasoned opinion from other states when Illinois has an immediate decision on this, and it's a uniform law. And so the last Illinois Supreme Court case on a similar statute, as Justice Reyes pointed out, are these old cases from the 1800s on different statutes. And, by the way, those states saw revocation upon remarriage concerning women's rights at that time when women didn't have a way to control their own estate planning. Times have changed. But going back to the cases that you referred to, particularly the Toller case, there is no cases either that distinguish Toller or that in any way reverse or in any way affect the language of Toller regarding the – if you're going to draw up a statute and you want it to be retrospective, then you must put that language in there. And the Toller case specifically says that that language must be clear in the statute. Well, the rule of thumb, of course, the axiom is that you don't want to apply any statute retroactivity. But the same token is that a court is to apply the law in effect at the time it renders its decision. And so you have those items. Even if you look at Justice Kagan's holdings in the Spain v. Martin case, she talks about the so-called revocation of divorce statutes avoiding the testamentary bequest to her former spouses. And she laid that out in her opinion in that case as well. And then we look at Justice Breyer's decision in the case that we cited in our reply brief that was cited in the Meyer v. Benford case as well, that the usual intent of any person that's presumed intent, and you have all these laws showing presumed intents to make litigation less likely if you look at the presumed intent of a testator not to do something, not to give things to your ex-wife. And that's a presumed intent. When you look at it, actually, you have to give the effect of the divorce court order as well. And clearly nothing was given to Beverly concerning the life insurance. She got many other things, but she did not get the life insurance. And, like we said already, there's no new duties to Beverly. She doesn't have to pay insurance premiums. Any new acts she would have to do, there's nothing. It would be the decision to actually do the redesignation paperwork, not her. So she has nothing at all to do. So, in other words, under the PERI analysis from 2018, that's the Illinois Supreme Court case, you look at how they decided that, it's really no one-size-fits-all. When we look at that, and so under that PERI analysis, Beverly feels on all three issues. She didn't, there was no rights that was impaired because she didn't have any. She had only expectancies, which Illinois is clear when you're a beneficiary on insurance policy, it's not a right unless you're irrevocable by a previous court order or agreement. That's not the case here. The kids were grown. It was not part of any requirement of the decedent. Would it increase a party's liability? No, it wouldn't. It's not an increase she would have to pay anything. She wasn't even involved with it at all. She didn't even mention it in divorce papers at all, anywhere. And would it impose new duties on her? No, it wouldn't. He's paying the bill. So, we're asking, is my time almost up? Let's see. Not yet. Still have a few minutes. Good. Did you want to reserve time for rebuttal? Yes, I do. Okay. All right. Thank you. Good morning, Mr. Stevens. How are you? Good morning. I'm pleased to court. The first question that the panel has to answer is, is there appellate jurisdiction? And there isn't. There is no appellate jurisdiction in this case. This is a 304A appeal. The notice of appeal obviously was due 30 days after the judgment and the 304A finding. And it was filed 76 days after the judgment and the 304A finding. Now, there could be an extension under Supreme Court Rule 303A1 if there was a post-trial motion that was directed against the judgment. There wasn't. There was a post-trial motion, but it wasn't directed against the judgment. The judgment was September 14. The post-trial motion was directed solely, exclusively, and entirely against the August 10 order. The August 10 order was an important order, no doubt about it. The judge resolved the big issue in this case. But there were numerous pending issues that were not resolved. But wasn't just one of the issues whether or not they were going to file a wrinkly affirmative defense? No. There was no judgment entered on Beverly's claim against Terrence or Terrence's claim against Beverly. There was no judgment on August 10 on that. Also, Terrence had a cross-claim, we call it in Illinois a counter-claim, against the co-defendant, Michelle. And that was not resolved. None of that was resolved on August 10. And the judge said specifically that she was continuing the case and the court retains jurisdiction. And if the affirmative defenses, which she gave Terrence leave to replete, were not replete, the court anticipates entering a final order on September 14. There could have been a 304A finding on August 10, but there was not. Therefore, that was a wholly interlocutory order. The motion for reconsideration, the orders on the motion for reconsideration, my response to the motion for consideration, the ruling on the motion for consideration, all said it was directed against the August 10 order. Therefore, there was no extension of the time to file the notice of appeal. The party had absolutely a right to file a motion to reconsider that interlocutory order. No doubt about it. The party could always file such a motion. But he had to reference the September 14 judgment in order for there to be an extension of the time. What case says that? That's In re Wada, In re Marriage of Wada. This motion was a motion to reconsider. You don't think that that would be a motion to reconsider the September 14 order? The motion to reconsider has to have two components in order to give you an extension, as the appellant,  Why? It has to invoke one of the forms of relief stated in Section 2-1203 of the Code of Civil Procedure. This one did. It asked for a reconsideration. So we can see that. But the second component is it has to be directed against the judgment. Rule 303-A-1 specifically says twice that the motion for reconsideration or any other post-judgment motion in order to extend the time for filing the notice of appeal has to be directed against the post-judgment, against the judgment order. It never once even mentioned that order. It could have been, but it wasn't. It could have said September 14, but it didn't. And could have been does not create an extension. There is no appellate jurisdiction. Now, I'll concede. Don't spend all your time on the jurisdiction. Okay. The last point is I'll concede that there was a motion that I filed to dismiss the appeal, but as Your Honor well knows, this panel is obligated to re-inquire as to the appellate jurisdiction. Always. Always. You always have to look at our jurisdiction. You're always obligated to do that. All right. So on the merits. The statute was effective January 1, 2019. The divorce was in March of 2016, roughly three years prior. The operative act is the divorce. And on the day of the divorce, the statute did not exist. There was no need to include anything in that judgment of dissolution of marriage about this life insurance policy. Because the law then was, as it had been in Illinois from time immemorial, excuse me, life insurance. That went into effect with this statute that took effect January 1, 2019, three years after the divorce. What about the argument that the senator in the Senate and the representative in the House verbally indicated what their intent was, and that was that no one who is divorced should receive benefit to insurance policies? And there's a contrary argument to that that I cited in the blue brief where there was a senator, the sponsor of the bill, who said this statute will apply to people who are going through a divorce. These two folks to this divorce, Beverly and Tyrone, were not going through a divorce when this statute went into effect. They had already been divorced three years earlier. So this statute is clearly a substantive statute. It's not procedural. I mean, it took away, it applied a $250,000 policy. It's substantive. And substantive statutes are not to be retroactively applied unless the legislature expresses a clear and unmistakable intent to do so. And there's nothing in this statute that so states. If there had been language one way or the other in this statute, well, that would be controlling and we wouldn't be here. That would be the answer. But you've got conflicting legislative intent expressed by persons in the General Assembly. So you can read it either way you want. And I think it's really ambiguous. What about the other argument that the Uniform Probate Code has that language or at least gives an inference that that language exists, and the rest of the country in terms of cases that interpret the Uniform Probate Code say that's correct? Yeah. We're in Illinois. We're not in the rest of the country. And I think that's a red herring argument. And in Illinois, we have two Supreme Court cases that were right on point. We have the Will of Toler and we have Champaign County Bank. Both of those cases involve a statute pertaining to a will. And a will is really like a life insurance policy. This is term life, by the way. There's no cash surrender value. A will has no value. It's meaningless. It can be revoked until the death of the test taker. Then it becomes very important. Life insurance is the same way. You can redesignate the beneficiary. There's no value to it, has no cash surrender value until the death of the insured life. Then it becomes very important. So the analogy between a will and a life insurance policy is really a good analogy here. And in both the Inmate Will of Toler case and the Champaign County Bank v. Judges case, the Supreme Court said that we're not going to apply the statute to a will that was executed before the effective date of the statute. Same thing here. We cannot apply the statute to a life insurance policy with a designation that was created before the effective date of the statute. And following up on Justice Berg's question with regards to the insurance policy, there's no cases on point in Illinois with regards to when is the operative date? Well, because this statute that went into effect January 1, 2019, was the first time that Illinois had a statute that voided a beneficial interest in a life insurance policy if there was a divorce. An important thing is, this is a divorce statute. It's in the Dissolution of Marriage Act. It's not in the probate code. It's not in the provision of contracts. It's nowhere other than in the Dissolution of Marriage Act. And this is not a dissolution of marriage case. This is a chancery case. It's a bridge of contract case is what this really is. So this statute cannot be retrospectively applied to this designation of beneficiary of this life insurance policy. Tell me the senator's language that's been raised in this case. Go through. All right. So does that mean when someone's going through a divorce proceeding that they're no longer a designated beneficiary under the insurance policy? Or do you have to wait until the actual divorce is completed? Well, it's when there's a judgment of dissolution of the marriage. Right. Absolutely.  That judgment for future divorces, not this one, but for future divorces, that judgment will, just like it voided a legacy and a will going back to 1957, in the future it will void a beneficial interest in a life insurance policy. And again, there's savings provisions in the statute regarding will, and there's a saving provision in the statute. Now, there's a presumption in the law. It's a legal fiction, I agree. But there's a presumption in the law that people know the law, in effect, at the time that they act. These are two unsophisticated people. So that's a legal fiction, perhaps not a legal fact. Well, there was an attorney who wrote up this divorce decree in this case. And he's presumed to know the law. And the law at the time was, as it had been forever in Illinois, that a dissolution of the marriage does not void life insurance. So he's presumed to know that this judgment did not void this life insurance policy. And it wouldn't until three years later, if you then take it three years later and retroactively apply it to this judgment three years prior. Most respectfully, you just can't do that. The divorce is the event of revocation. The statute was not in effect when there was a divorce. We respectfully request this honorable court to affirm. Thank you very much. Okay. Let's hear the rebuttal. Thank you again. We have to keep in mind the insurance policy instrument itself clearly shows the intent of Mr. Shaw. He put down to my wife, Beverly Shaw. When you look at the definitions in the policy as well, close relative does not include ex-wives, ex-spouses in any event. So he clearly is the owner under the contractual terms of the policy. She is clearly not anybody that should be inheriting or getting proceeds of the policy. So you have those items. Also, most of the other states that ruled in the same way we're asking you to rule today, talk about the statute. You don't have to do the procedural versus substantive changes. All the other courts say this is actually a procedural law. So because it's procedural, you can actually go back retroactively and get into that definition of what is anyways retroactivity or retrospective analysis. So how do we know that his intent really was not to benefit her, because then therefore maybe the children would benefit as a result if she would take care of the children once she becomes a beneficiary under the insurance policy? That's a good question. In this case, there was only one child by this marriage. Mr. Shaw had two children by a previous relationship. And so one of the party's children would be benefiting. Possibly my client is not the party's children in this case, though, from a previous relationship. But he didn't do anything the statute required him to do to redesignate her. And if you look at the divorce, as Mr. Stephens was just talking about, Beverly's one of her three lawyers could have easily put in the divorce decree that she should remain the irrevocable beneficiary of that life insurance policy. It was in the 13.3s, all of the four policies. He could have easily put in one of these four, all of the four, or three of the four. He didn't do that. The trial judge, Judge Gamareth, also didn't do that. It was a trial. They said it was approval, but it actually was a trial. So the trial judge didn't do it. The lawyer didn't do it. Beverly's post decree didn't do that in her petition. Nothing was done by the lawyers for Beverly or the judges in each of the two matters, the post decree and the original divorce decree. And so it's clear from the intent he didn't redesignate her. The policy doesn't define her as one who has a right to any policy designation. And it's clear from all the readings of Justice Kagan that it's presumed that the average Joe does not want his ex-spouse to be inheriting what he didn't give her in the divorce. Those are Justice Kagan's words. And clearly that's the underlying principle of his revocation upon divorce, that the uniform body of law is made to match the presumed intent of the testators. So we're asking your honors to go with and be compliant with all the other states who interpreted this and ruled that death is the key date because that is a date that that's when the insurance got paid on. If you didn't die, that's the key date that the insurance company put the proceeds into the trust that we're holding. Thank you very much. Thank you for giving us very interesting oral arguments and interesting briefs. It was a very interesting case, and we'll have a decision for you shortly.